UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| S.A. TINNIN-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-1248-SEB-TAB |
| | ) | |
| MARION COUNTY JUVENILE JUSTICE | ) | |
| COMPLEX, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### (Docket No. 31)

This cause is before the Court on Defendant's Motion for Summary Judgment

[Docket No. 31], filed on January 9, 2009, pursuant to Federal Rule of Civil Procedure 56

and Local Rule 56.1.  Plaintiff, S.A. Tinnin-Bey, brings his claim against his former

employer, Defendant, Marion County Juvenile Justice Complex, also known as the Marion

Superior Court Juvenile Detention Center ("the Detention Center"), for its allegedly

discriminatory actions toward him based on his sex (male), in violation of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*  Mr. Tinnin-Bey further

alleges that the Detention Center violated his rights under the Fifth, Eighth and Fourteenth

Amendments to the Constitution of the United States.  For the reasons detailed in this entry,

we GRANT Defendant's Motion for Summary Judgment.[1]

---

[1] On May 27, 2009, Plaintiff filed a Motion for Leave to File Omitted Index and Records
(continued...)

## Factual Background

**General Background**

In September 2004, Mr. Tinnin-Bey was hired as a youth manager at the Detention Center, a 24-hour residential detention facility located in Marion County, Indiana, which protects, houses, and educates juveniles alleged to have committed criminal offenses. Deposition of S.A. Tinnin-Bey ("Tinnin-Bey Dep.") at 54. The facility is operated by the Marion Superior Court and is overseen by a superintendent and the Marion Superior Court Executive Committee. Affidavit of Paige Bova ("Bova Aff.") ¶¶ 4, 8. Administration of the Detention Center, including hiring and firing of personnel, is generally handled by the superintendent and his or her staff. Id. ¶ 9. At the time Mr. Tinnin-Bey was hired, the Detention Center was administered by the superintendent, Damon Ellison, (who hired Mr. Tinnin-Bey) and Judge of the Juvenile Court, Judge James Payne. Tinnin-Bey Dep. at 107. In November 2005, Mr. Tinnin-Bey was promoted by Mr. Ellison to assistant shift manager, a position which he held until August 2006, when he was promoted to the position of shift manager by Robert Bingham, the assistant chief probation officer at Marion Superior Court. Tinnin-Bey Dep. at 55. Mr. Tinnin-Bey held the position of shift manager until he was terminated in October 2006.

The day-to-day operations of the Detention Center, such as general security, scheduling of staff, and discipline of staff and/or juvenile offenders, are generally handled

---

[1](...continued)

1-12 [Docket No. 51]. We hereby GRANT Plaintiff's motion.

by salaried "shift managers" or "shift supervisors." Bova Aff. ¶¶ 10, 14. Two shift managers are assigned to each shift (day, evening, and night), so that at least one shift manager is present at the Detention Center at all times, and, when administrative staff is away, shift managers oversee all aspects of the facility's operation. Id. ¶¶ 12-13. Hourly employees, such as assistant shift managers and youth managers, assist the shift managers in operating the facility, but are subordinate to shift managers. Youth managers work directly with the juvenile offenders housed at the Detention Center and are responsible for ensuring that the juveniles are properly housed, fed, and transported to classes and activities. Youth managers are also responsible for ensuring that the juveniles behave appropriately, acting as "guards" and directly intervening if and when conflicts arise between juvenile offenders. Id. ¶¶ 17-20. Assistant shift managers perform the same duties as youth managers, but also assist the shift managers with various tasks, including relieving youth managers for periods of time and performing other miscellaneous security-related tasks, such as monitoring offenders, when necessary. Id. ¶¶ 21-22; Affidavit of Robert Bingham ("Bingham Aff.") ¶ 23.


**Plaintiff's Employment Application**

On his employment application, in response to a question regarding whether he had ever been convicted of a crime, Mr. Tinnin-Bey answered in the affirmative and listed his convictions as follows:

    1972  Assault and Battery w/intent to commit a felony;
    1977  Theft of stolen property (Possession); and
    1979  Possession of controlled substance

Exh. 6.  Mr. Tinnin-Bey also checked the box on the application to allow the Detention Center to check references on his past employers and provided his criminal history, dated May 12, 2004, to the facility.  <u>Id.</u>  In addition to information regarding his criminal convictions, Mr. Tinnin-Bey's criminal history report listed various aliases, including "Steve Tinnin" and "Steven Tinnin," and contained Mr. Tinnin-Bey's right thumbprint as well as his social security number and his Indiana driver's license number.  Exh. 7.

**Investigation of the Detention Center**

In late 2005 and early 2006, the Indianapolis Police Department, Marion County Sheriff's Department and the Marion County Prosecutor's Office conducted a five-month, multi-agency investigation into activities at the Detention Center.  Bingham Aff. ¶¶ 25-26. The investigation revealed evidence that a number of employees had engaged in sexual acts and sexual misconduct with underage juvenile offenders detained at the facility.  Bova Aff. ¶¶ 25, 27.  Consequently, nine employees of the Detention Center (eight youth managers and one control operator) were charged with various felony offenses, including sexual battery, sexual misconduct with a minor, and official misconduct.  Mr. Ellison, the superintendent at the time, was also charged with a felony charge of official misconduct as a result of the investigation.  <u>Id.</u> ¶¶ 26, 28; Bingham Aff. ¶¶ 26-28; 31.  On April 25, 2006, information regarding the investigation and subsequent arrest of the employees of the Detention Center became public in an article published by *The Indianapolis Star* ("the *Star*").  Exh. J; Bova Aff. ¶ 27.

4

In April 2006, following his arrest, Mr. Ellison was suspended and subseqently retired as superintendent of the Detention Center.  Bova Aff. ¶ 31.  The Marion Superior Court appointed Chief Probation Officer Robert Bingham to replace Mr. Ellison and charged Mr. Bingham with the tasks of auditing and reforming the facility, including its policies, procedures, and personnel.  Mr. Bingham brought in the Marion Superior Court's director of human resources, Paige Bova, to assist him in reforming the Detention Center.  Id. ¶¶ 32-34; Bingham Aff. ¶¶ 32; 34-35.

On June 14, 2006, another youth manager at the Detention Center, Gates Robertson, was arrested two blocks away from the facility and charged with possession of illegal drugs. Bova Aff. ¶ 36.  On June 15, 2006, the *Star* published a story recounting the arrest and reporting that Mr. Robertson had an extensive criminal history.  Exh. K; Bova Aff. ¶ 37. Following Mr. Robertson's arrest, Mr. Bingham instructed Ms. Bova to check the criminal histories of eighty-eight employees of the Detention Center, including Mr. Tinnin-Bey. Using the National Crime Information Center ("NCIC") and Marion Country JUSTIS records, Ms. Bova determined that, of those eighty-eight employees, twenty-four had criminal histories.  Bova Aff. ¶ 38.

**Employees Terminated Due to Criminal Histories**

A number of the employees with criminal histories had either failed to disclose their criminal records on their applications or had criminal histories that, according to Mr. Bingham, Ms. Bova, and the Executive Committee, made their continued employment at a

juvenile detention center inappropriate.  Consequently, between June 22, 2006, and June 29, 2006, with the approval of Ms. Bova and the Executive Committee, Mr. Bingham terminated six of the twenty-four employees based on their criminal histories.  Binham Aff. ¶ 43.  Four of the terminated employees were male (Michael Griffin, Tyrone Payton, Calvin Hill, and Leonard Quick) and two were female (Adrienne Johnson and Wendy Shelton).  All of the terminated employees, except Ms. Shelton, were youth managers.  Ms. Shelton held the position of shift manger.  Bova Aff. ¶ 44.

Mr. Griffin, Ms. Shelton, and Mr. Payton were terminated for lying about their criminal records on their employment applications.  On their applications, these employees had all stated that they had no criminal history.  However, Mr. Griffin had a 2002 criminal conviction, Ms. Shelton was convicted of crimes in 1997 and 2004, and Mr. Payton had a 1993 criminal conviction.  Ms. Johnson, Mr. Hill, and Mr. Quick were terminated because their criminal histories were deemed inappropriate for individuals working with juvenile offenders.  In July 2002, Mr. Hill was convicted of battery.  Mr. Quick had been convicted of public intoxication in 1988 and the crime of battery in 2000.  It is unclear from the record the nature or extent of Ms. Johnson's criminal history.  Id. ¶¶ 46-57.

Not all employees of the Detention Center who had criminal histories were fired.  Several employees with criminal convictions were placed under strict supervision at the Detention Center, including those identified by Mr. Tinnin-Bey, namely, Michael Robinson, Janelle White, Diane Petty, Shatona Reese, and Yvonne Reeves.  Mr. Robinson was a shift manager who had served a sentence in a federal prison but who was allowed to continue

working at the facility.  Tinnin-Bey Dep. at 100.  Ms. Petty, a youth manager, had two

misdemeanor convictions for operating a motor vehicle while intoxicated (in 1992 and 1994)

and a felony conviction for conspiracy to possess a controlled substance (in 1979), but was

offered strict supervision.  Bova Aff. ¶ 60.  Ms. White, also a youth manager, had a

misdemeanor conviction for criminal conversion from 2001 and was offered strict

supervision.  Id. ¶ 63.  Ms. Reese and Ms. Reeves both worked as assistant shift managers

and were placed under strict supervision despite Ms. Reese's misdemeanor conviction for

criminal conversion in 2000 and Ms. Reeves's misdemeanor conviction for theft in 1986.

Id. ¶¶ 61-62.  Several other employees were placed on strict supervision as well, including

a number of other males.  Tinnin-Bey Dep. at 99-101.  Ms. Bova testified by affidavit that

the employees who received strict supervision had criminal histories that were deemed less

serious or less extensive than the employees who were terminated.  Bova Aff. ¶ 58.


**Plaintiff's Promotion and Subsequent Termination**

As she had done with other employees, Ms. Bova checked Mr. Tinnin-Bey's criminal

history through federal and county records using his legal name "Saddam Tinnin-Bey" and

his social security number, but the search revealed no criminal history.[2]  Bova Aff. ¶¶ 41-42.

Following Mr. Tinnin-Bey's background check, in August 2006, Mr. Bingham filled the

---

[2] Ms. Bova did not review Mr. Tinnin-Bey's employment application as a part of this process.  She testified in her affidavit that only after she determined that an employee had a criminal history did she subsequently review that employee's application for employment to determine whether the convictions were disclosed.  Bova Aff. ¶ 39.

open shift manager position created as result of Ms. Shelton's termination by promoting Mr. Tinnin-Bey from the position of assistant shift manager to shift manager.  Bingham Aff. ¶¶ 48-51.

From August 2006 to October 2006, Mr. Tinnin-Bey worked as shift manager on the evening shift.  Bova Aff. ¶ 68.  In October 2006, Dana Oglesby, a former employee, and Jack Rinehart, a local television reporter, contacted Mr. Bingham alleging that Mr. Tinnin-Bey had a criminal history and had served time in prison.  Bingham Aff. ¶¶ 52-53.  Based on this information, Mr. Bingham instructed Ms. Bova to check Mr. Tinnin-Bey's criminal history a second time.  Ms. Bova again conducted a criminal background check under the name "Saddam Tinnin-Bey," which revealed no convictions.  Ms. Bova then contacted a supervisor in the probation department, Jay Wurz, who ran a search of records from the Indiana Department of Corrections, which revealed that Mr. Tinnin-Bey's given name was "Steven Alexander Tinnin."  Bova Aff. ¶¶ 69-72.

The Department of Corrections records disclosed that Mr. Tinnin-Bey had a criminal history consisting of three felony convictions and various misdemeanor convictions under the name of Steven Alexander Tinnin.  Consistent with information Mr. Tinnin-Bey had noted on his original employment application, in 1972, he had been convicted for Assault and Battery with Intent to Commit a Felony; in 1977, he had been convicted of Theft, a Class D felony; and in 1979, he was convicted of Possession of a Controlled Substance, also a Class D felony.  Mr. Tinnin-Bey had also been convicted of various misdemeanor charges, including burglary and assault.  Following his 1979 felony conviction, Mr. Tinnin-Bey was

sentenced to thirty years in prison based on the Habitual Offender sentencing enhancement. Tinnin-Bey Dep. at 5-9.  He was released from prison in 1994 after serving almost fifteen years.  Id. at 7-8.

After learning of Mr. Tinnin-Bey's criminal history, and with the approval of Marion Superior Court Judge Cale Bradford, Mr. Bingham decided to terminate Mr. Tinnin-Bey's employment.  Bingham Aff. ¶¶ 60-61.  On October 20, 2006, Mr. Bingham and Ms. Bova met with Mr. Tinnin-Bey at the Detention Center and informed him that his employment was being terminated due to his past criminal convictions.[3]  See Exh. E.

**Plaintiff's Complaint of Sexual Harassment**

On October 8, 2006, shortly before he was terminated, Mr. Tinnin-Bey filed a complaint with upper management at the Detention Center, alleging that a female subordinate employee, Yvonne Pearson, was creating a hostile work environment for him.  According to Mr. Tinnin-Bey, Ms. Pearson refused to acknowledge his authority as her supervisor, made disparaging and public remarks about him, and placed a condom on his desk.  On October 12, 2006, Mr. Tinnin-Bey issued Ms. Pearson a corrective action report, which resulted in

---

[3] At that time, Mr. Tinnin-Bey was given a Marion Superior Court Corrective Action Record, detailing the reasons for his termination as follows:

On 10-20-2006 we conducted an investigation into allegations of your extensive criminal history.  We did discover on your employment application several criminal convictions that you did list.  Based on this information, we can not continue your employment with Marion Superior Court.

Exh. E (Corrective Action Record) at 1.

a three-day suspension, citing: (1) her refusal to follow a work instruction he had given her; (2) her failure to respond to a radio duress call when resident assistance was required to restrain a resident; (3) inappropriate comments she had made to him; and (4) her unprofessional and negative manner with other staff members while on duty.  Exh. 12.

**The Instant Litigation**

On October 31, 2006, Mr. Tinnin-Bey filed a charge with the Equal Employment Opportunity Commission ("EEOC"), claiming that he was discriminated against based on his gender.  On September 27, 2007, Mr. Tinnin-Bey filed his pro se complaint in this court, again alleging that his termination was the result of gender discrimination and in retaliation for his having filed a grievance alleging that he had been sexually harassed in the workplace by a female employee.

**<u>Legal Analysis</u>**

**I.      Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all

10

facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d

518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available.  Seener v. Northcentral Technical Coll., 113 F.3d 750, 757 (7th Cir. 1997); Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 354 (7th Cir. 1996).  To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination.   However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts.  Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997).

## II.    Gender Discrimination

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

sex." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff may prove discrimination under Title VII either with direct evidence of discrimination or indirectly through the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Scaife v. Cook County, 446 F.3d 735, 739 (7th Cir. 2006).  The parties here have addressed only the indirect method in their submissions, so we shall follow their lead and discuss only that avenue of proof.

Under the McDonnell Douglas framework, a plaintiff must begin by establishing a *prima facie* case of discrimination.  If one can be established, the burden shifts to the defendant to articulate a nondiscriminatory reason for the actions it took against the plaintiff. If the defendant can offer a legitimate, nondiscriminatory reason for the employment decision, the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual.  Nese v. Julian Nordic Const. Co., 405 F.3d 638, 641 (7th Cir. 2005).  Generally, the *prima facie* case requires a showing by the plaintiff: (1) that he was part of a class of persons protected by Title VII; (2) that he was meeting his employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly-situated individuals outside his protected class were treated more favorably.  See Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 830 (7th Cir. 2007).[4]

---

[4] The Detention Center contends that because, here, a member of a historically favored class (males) is alleging that he was discriminated against, a modified version of the McDonnell Douglas framework is applied, requiring Mr. Tinnin-Bey to adduce evidence of "background circumstances that demonstrate that a particular employer has reason or inclination to

(continued...)

Because the Detention Center does not appear to challenge the second and third prongs of the analysis, to wit, that Mr. Tinnin-Bey was meeting his employer's legitimate job expectations (save for his criminal record) and that he suffered an adverse employment action when he was terminated, our analysis shall focus on the fourth prong of Mr. Tinnin-Bey's *prima facie* case under the <u>McDonnell Douglas</u> framework as well as the pretext inquiry.

## A.    Similarly Situated Employee

For an employee to be similarly situated to a plaintiff for purposes of a <u>McDonnell Douglas</u> comparison, "a plaintiff must show that there is someone who is directly comparable to [him] in all material respects." <u>Winsley v. Cook County</u>, 563 F.3d 598, 605 (7th Cir. 2009) (quoting <u>Patterson v. Avery Dennison Corp.</u>, 281 F.3d 676, 680 (7th Cir. 2002)). To determine whether two employees are directly comparable, courts consider factors such as whether the employees held the same job description, were subject to the same standards, were subordinate to the same supervisor, and had comparable experience, education, and other qualifications, if relevant. <u>Brummett v. Sinclair Broadcast Group, Inc.</u>, 414 F.3d 686,

---

[4](...continued)
discriminate invidiously against [the historically favored class] or evidence that there is something 'fishy' about the facts at hand." <u>Gore v. Indiana University</u>, 416 F.3d 590, 592 (citing <u>Phelan v. City of Chicago</u>, 347 F.3d 679, 684 (7th Cir. 2003)). Mr. Tinnin-Bey has failed to address this issue or present any evidence whatsoever as to background circumstances. However, under Seventh Circuit law, even if the plaintiff is unable to show background circumstances, he may still succeed under the indirect method, if he can establish a logical reason to believe that the decision rested upon a forbidden ground. <u>Mills v. Health Care Serv. Corp.</u>, 171 F.3d 450, 456 (7th Cir. 1999). Thus, we proceed to the next stage of analysis under the indirect method of proof to determine whether such a logical reason exists.

692-93 (7th Cir. 2005). Further, while "[a] similarly situated employee need not be 'identical,' . . . the plaintiff must show that the other employee . . . had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him]." <u>Caskey v. Colgate-Palmolive Co.</u>, 535 F.3d 585, 592 (7th Cir. 2008) (citations omitted).

Mr. Tinnin-Bey contends that Diane Petty is a similarly situated female employee who was treated more favorably than he was. According to Mr. Tinnin-Bey, Ms. Petty had a criminal history comparable to his, held a similar position at the Detention Center, and yet received only strict supervision. Mr. Tinnin-Bey contends that the fact that Ms. Petty, a female, was not terminated despite her comparable criminal record satisfies the fourth prong of the <u>McDonnell Douglas</u> analysis. We disagree. Although at the time Ms. Petty was placed on strict supervision in June 2006, she and Mr. Tinnin-Bey held arguably similar positions,[5] by the time that Mr. Tinnin-Bey was terminated in October 2006, which is the relevant time for our analysis, he had been promoted to the position of shift manager, while Ms. Petty remained a youth manager. As discussed above, shift managers are subject to differing job descriptions and perform different tasks than youth managers do. More significantly, as a shift manager, Mr. Tinnin-Bey held supervisory authority over hourly employees, including assistant shift managers and youth managers, such as Ms. Petty.

_____

[5] At the time Ms. Petty was placed on strict supervision, she was a youth manager and Mr. Tinnin-Bey was an assistant shift manager. As discussed above, assistant shift managers had all of the same duties as a youth manager, but also had certain additional duties, including relieving youth managers for periods of time and performing other miscellaneous security-related tasks, such as monitoring offenders, when necessary.

Further, we find that Ms. Petty's criminal record is distinguishable from Mr. Tinnin-Bey's.  Ms. Petty had two misdemeanor convictions for operating a motor vehicle while intoxicated in 1992 and 1994, as well as one felony drug conviction in 1979.  It is unclear from the record whether Ms. Petty served time in prison for any of her offenses and, if so, how long she was imprisoned.  Mr. Tinnin-Bey, on the other hand, had three felony convictions, including assault and battery with an intent to commit a felony in 1972, theft in 1977, and possession of a controlled substance in 1979.  During that same time period, he had also been convicted of various misdemeanor charges, including burglary and assault. As a result of his third felony conviction in 1979, Mr. Tinnin-Bey served almost fifteen years in prison until he was released in 1994.  Being mindful that, as a shift manager, Mr. Tinnin-Bey was tasked with supervising both the juvenile offenders housed at the Detention Center as well as hourly employees, we find that the severity of each of Mr. Tinnin-Bey's three felony convictions, particularly the conviction for felony battery combined with the extended time that he had been incarcerated distinguishes his criminal history from Ms. Petty's, and, thus, we cannot say that Ms. Petty is a similarly situated employee to Mr. Tinnin-Bey.

**B.    Pretext**

Even if Mr. Tinnin-Bey had established a *prima facie* case of discrimination, his claim would nevertheless fail because he is unable to show that the Detention Center's proffered reason for terminating him – his criminal record – was mere pretext.  Under Seventh Circuit law, "[t]he focus of a pretext inquiry is whether the employer's stated reason was honest, not

whether it was accurate, wise, or well-considered." Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000) (citations omitted).  Thus, to demonstrate pretext, a plaintiff "must establish that the [employer's] explanation is a lie, which permits a jury to infer that the tale has been concocted to conceal an unlawful truth."  Yindee v. CCH Inc., 458 F.3d 599, 602 (7th Cir. 2006) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)).  Mr. Tinnin-Bey is unable to meet this burden here.

Initially, we note that even if we had found Ms. Petty to be a similarly-situated employee who received more lenient treatment from the Detention Center despite a similar criminal record, under Seventh Circuit law, such a disparity alone would not establish that the distinction was based on Mr. Tinnin-Bey's gender.  See Walker v. Abbott Laboratories, 416 F.3d 641, 644 (7th Cir. 2005) ("A plaintiff cannot be permitted to manufacture a case merely by showing that the employer does not follow its employment rules with Prussian rigidity.").  This conclusion is buttressed by the fact that Mr. Tinnin-Bey conceded in his deposition that there were other men, not just women, who, despite having criminal records, received strict supervision rather than termination.  For example, Mr. Tinnin-Bey testified in his deposition that Michael Robinson, also a shift supervisor like Mr. Tinnin-Bey, was given strict supervision despite having served time in federal prison.  Tinnin-Bey Dep. at 100.  It is clear under Seventh Circuit law that "where the protected-class members 'sometimes do better' and 'sometimes do worse' than their comparators is not evidence of [] discrimination." Faas v. Sears, Roebuck & Co., 532 F.3d 633, 643 (7th Cir. 2008) (citing Bush v. Commonwealth Edison Co., 990 F.2d 928, 931 (7th Cir. 1993).  This appears to be

the case here.

Nevertheless, Mr. Tinnin-Bey contends that the fact that his criminal history was already recorded on his employment application in his personnel file, or, in the alternative, that Ms. Bova had sufficient information (including his social security number and driver's license number) with which to conduct a correct criminal background check that would have revealed his criminal history during the initial search, demonstrates that the Detention Center's proffered reason for his termination was not its actual motivation for his discharge. However, whether Ms. Bova's investigation into Mr. Tinnin-Bey's background could have been better conducted at the outset is not material to this dispute because simply proving that the Detention Center should have discovered his criminal record earlier does not show that the Detention Center's proffered reason for firing him, to wit, his criminal history, is a lie.

It is clear, as Mr. Tinnin-Bey asserts, that he reported his felony convictions on his employment application and that, when he was hired, the superintendent of the Detention Center at the time, Damon Ellison, knew of his criminal record. However, there is no evidence that, once the administration of the Detention Center changed, either Ms. Bova or Mr. Bingham knew of Mr. Tinnin-Bey's criminal record when the initial background search was performed, or that they deliberately withheld knowledge of his criminal record to conceal a subsequent discriminatory employment decision. In short, there simply is no evidence in the record to suggest that, at the time Mr. Tinnin-Bey was terminated, those responsible for his termination did not honestly believe that, because of the nature and severity of his criminal record, he could no longer remain employed at the Detention Center.

In further support of his contention that his criminal history was merely a pretext for discrimination, Mr. Tinnin-Bey points to the fact that he had had a clean record since he was released from prison in 1994 and that he had completely rehabilitated his life and become a positive mentor for youth in the community.  The positive transformation that he urges us to consider is both evident from the record before us and clearly laudable.  However, it is well-established under Seventh Circuit precedent that, "the question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground."  Forrester v. Rauland-Borg Corp., 453 F.3d 416, 417 (7th Cir. 2006); see also Little v. Illinois Dep't of Revenue, 369 F.3d 1007, 1012 (7th Cir. 2004) ("This circuit adheres to the honest-belief rule: even if the business decision was ill-considered or unreasonable, provided that the decisionmaker honestly believed the nondiscriminatory reason he gave for the action, pretext does not exist.") (citations omitted).  Based on our careful review of the record before us, we are simply unable to find that Mr. Tinnin-Bey's criminal record was not the honest reason for his termination.

Because Mr. Tinnin-Bey has been unable to make out a *prima facie* case of discrimination or to demonstrate pretext, we GRANT the Detention Center's Motion for Summary Judgment on Mr. Tinnin-Bey's Title VII gender discrimination claim.

### III.    Title VII Retaliation

Under Title VII, it is unlawful "for an employer to discriminate against any of [its] employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  Here, Mr. Tinnin-Bey contends that the Detention Center unlawfully retaliated against him when it terminated him shortly after he filed a complaint alleging that he was being subjected to sexual harassment by a subordinate female employee.  The Detention Center rejoins that, because Mr. Tinnin-Bey failed to allege a Title VII retaliation claim in either his EEOC charge or his complaint,[6] he cannot now assert such a claim in his response brief.

### A.    Failure to Exhaust Administrative Remedies

The scope of Mr. Tinnin-Bey's claims brought pursuant to Title VII are "limited by the nature of the charges filed with the EEOC."  Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992).  Under Seventh Circuit law, a plaintiff may pursue a claim not explicitly included in the EEOC charge only if his or her allegations fall within the scope of the charges contained in the EEOC complaint.  Conner v. Illinois Dep't of Natural Resources, 413 F.3d 675, 680 (7th Cir. 2005)).  "[A] claim in a civil action need not be a replica of a claim described in the charge, but there must be 'a reasonable relationship between the

---

[6] In his complaint, Mr. Tinnin-Bey alleged, *inter alia*, that he had been terminated because he had complained of sexual harassment to Detention Center administrators, in violation of the Fifth and Fourteenth Amendments of the United States Constitution, but did not mention Title VII.

allegations in the charge and the claims in the complaint,' and it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" <u>Vela v. Village of Sauk Village</u>, 218 F.3d 661, 664 (7th Cir. 2000) (quoting <u>Cheek v. Western and Southern Life Ins. Co.</u>, 31 F.3d 497, 500 (7th Cir. 1994)).  In order to be reasonably related, "the EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals."  <u>Cheek</u>, 31 F.3d at 501 (emphasis removed).

In his EEOC charge, Mr. Tinnin-Bey alleged only that he believed he was discharged "in violation of Title VII of the Civil Rights Act due to my sex, male."[7]  Exh. G (EEOC Charge).  He neither checked the box for "retaliation" on the form, nor made any mention of the October 8, 2006, sexual harassment complaint he had filed with Detention Center administrators.  Further, the facts underlying Mr. Tinnin-Bey's claims are not similar.  His claim that he was discriminated against because of his gender is based solely on the fact that he was terminated for his criminal record while a female employee who also had a criminal

---

[7] In its entirety, Mr. Tinnin-Bey's EEOC charge provides:

I was employed by the company on September 7, 2007, Youth Manager.  My immediate supervisor Michael Murff, (bm) During my employment I had no attendance or performance problems.

On October 20, 2006, I was discharged for not valid reason.  I was told it was due to a non- disclosure of information on my application.

I believe I was discharged in violation of Title VII of the Civil Rights Act due to my sex, male.

Exh. G.

record merely received discipline.  Those facts are wholly unrelated to those underlying his claim that the Detention Center terminated him in retaliation for filing an internal complaint in which he alleged that he was being subjected to sexual harassment by a different female employee.

Mr. Tinnin-Bey failed to substantively address this procedural issue in his briefing, contending without further development, only that he "does not concede that Title VII might not apply."  Pl.'s Resp. at 16.  In light of these facts, we find that Mr. Tinnin-Bey is barred from presenting a Title VII retaliation claim because he failed to first exhaust his administrative remedies.  Moreover, even if Mr. Tinnin-Bey's claim were not procedurally barred, for the reasons detailed below, any such claim nevertheless fails on the merits.

### B.    Merits of Retaliation Claim

A plaintiff has two methods of proof available to him to demonstrate retaliation.  A plaintiff may prove retaliation either through the direct method of proof or the indirect method, also called the "burden-shifting" method.  See Tomanovich v. City of Indianapolis and Indiana Dep't of Transp., 457 F.3d 656, 662 (7th Cir. 2006) (citing Moser v. Ind. Dep't of Corr., 406 F.3d 895, 903 (7th Cir. 2005)).  It appears from his briefing that Mr. Tinnin-Bey is proceeding solely under the direct framework, so again we shall follow his lead and address only that analysis.  Under the direct approach, a plaintiff must present sufficient evidence to demonstrate that he opposed an unlawful employment practice, that he suffered an adverse employment action, and that there is a causal connection between the two.

22

Haywood v. Lucent Techs., Inc., 323 F.3d 524, 531 (7th Cir. 2003).  Here, Mr. Tinnin-Bey has failed to demonstrate a causal connection between his complaint and his subsequent termination.

Mr. Tinnin-Bey contends that the proximity in time between October 8, 2006, when he filed a written complaint with administrators of the Detention Center alleging that he was being sexually harassed in the workplace, and October 20, 2006, the day Mr. Tinnin-Bey was terminated, is direct evidence of retaliation.  It appears that Mr. Tinnin-Bey relies solely upon the temporal proximity (approximately two weeks) between the time he submitted his complaint to the Detention Center and his termination to demonstrate the causal link.  Under Seventh Circuit law, close temporal proximity may be evidence of causation, but it is well-established that "mere temporal proximity between the [statutorily protected activity] and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue."  Stone v. City of Indianapolis Public Utilities Division, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted).

While it is true that Mr. Tinnin-Bey was terminated within two weeks of lodging his written complaint with administrators at the Detention Center alleging sexual harassment, Mr. Tinnin-Bey offers no evidence of retaliatory motive beyond that temporal proximity.  The record before us shows that he was not terminated directly after filing his sexual harassment complaint, but instead was fired only after an intervening event, to wit, Mr. Bingham and Ms. Bova having first been alerted to his criminal record.  They reviewed this notice subsequent to Mr. Tinnin-Bey's report of sexual harassment, and it was his criminal

23

record that was cited as the reason for his termination. In short, Mr. Tinnin-Bey has failed to present any evidence which would justify deviating from the Seventh Circuit's well-established principle that temporal proximity alone is rarely sufficient to create a triable issue. Accordingly, we <u>GRANT</u> the Detention Center's Motion for Summary Judgment as to Mr. Tinnin-Bey's Title VII retaliation claim.

## V.   Constitutional Claims

It is evident from the complaint that Mr. Tinnin-Bey's constitutional claims are brought pursuant to 42 U.S.C. § 1983, which allows a federal cause of action for "the deprivation, under color of [state] law, of a 'citizen's rights, privileges, or immunities secured by the Constitution and laws' of the United States." <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 132 (1994). Mr. Tinnin-Bey alleges that the Detention Center, which is run by the Marion Superior Court, deprived him of various constitutional rights.

Although municipalities are susceptible to liability under § 1983, they cannot be held liable under a theory of respondeat superior. <u>Palmer v. Marion County</u>, 327 F.3d 588, 594 (7th Cir. 2003). Instead, to establish a genuine issue of material fact as to whether a governmental entity is liable under § 1983, a plaintiff must establish that the entity has a custom or policy that contributed to the deprivation of the plaintiff's constitutional rights. <u>Id.</u> Here, even assuming that the Detention Center is a separate suable entity, an issue left conspicuously undeveloped in the parties' briefing of the pending motion, Mr. Tinnin-Bey has alleged no municipal policy or custom concerning any constitutional violations. Rather,

he alleges that individuals working at the Detention Center deprived him of his constitutional rights.  Under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), such claims do not suffice against the Detention Center.  Assuming, *arguendo*, that Mr. Tinnin-Bey brought his § 1983 claims against a supervisor of the Detention Center in his or her individual capacity,[8] those claims would not survive summary judgment for the reasons detailed below.

### A.   Fourteenth Amendment Claims[9]

Mr. Tinnin-Bey alleges that he was terminated in retaliation for filing a sexual harassment complaint in violation of his rights under the due process and equal protection clauses of the Fourteenth Amendment.  The Detention Center, however, contends that his allegations arise only under Title VII, which, as discussed above, we have determined not to survive summary judgment.

### 1.   Equal Protection Clause

---

[8] Because a claim against an individual acting in his or her official capacity is in all respects except for name against the governmental entity, any official capacity claim would fail for the reasons already discussed.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).

[9] In his complaint, Mr. Tinnin-Bey also alleged a retaliation claim pursuant to the Fifth Amendment.  However, in his response briefing, Mr. Tinnin-Bey appears to have abandoned any retaliation claim based on the Fifth Amendment as he only discusses retaliation pursuant to the Fourteenth Amendment.  In any event, Mr. Tinnin-Bey's retaliation claim based on the Fifth Amendment is unavailing on the merits.  The due process clause of the Fifth Amendment applies to actions taken by the federal government, not those of state or municipal governments.  Because the individual decisionmakers at the Detention Center are not federal actors, the Fifth Amendment is entirely inapplicable.

To maintain an equal protection claim, Mr. Tinnin-Bey would have to demonstrate that someone acting under color of state law intentionally discriminated against him because of his membership in a particular class.  However, Mr. Tinnin-Bey's complaint alleges only that he was subject to retaliation because he filed a written complaint alleging sexual harassment by a female co-worker.  This allegation does not show that Mr. Tinnin-Bey was discriminated against because he is a member of a particular class, rather merely because of his conduct.  It is well-established under Seventh Circuit law that the right to be free from retaliation for protesting sexual harassment is a statutory right created by Title VII, not a constitutional right protected by the equal protection clause.  E.g., Boyd v. Illinois State Police, 384 F.3d 888, 898 (7th Cir. 2004); Gray v. Lacke, 885 F.2d 399, 414 (7th Cir. 1989).  A plaintiff can maintain an action under 42 U.S.C. § 1983 and bypass the procedural requirements of Title VII "[o]nly when the underlying facts support both a Title VII and a constitutional deprivation claim."  885 F.2d at 414.

Here, Mr. Tinnin-Bey has failed to assert, never mind establish a claim pursuant to the equal protection clause.  He alleges simply that he was terminated in retaliation for having filed an internal sexual harassment complaint.  A mere mention of the equal protection clause does not transform what is clearly a Title VII claim into an equal protection violation.

### 2.    Procedural Due Process

The fundamental requirement of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner."  Matthews v. Eldridge, 424 U.S. 319, 333

(1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  Mr. Tinnin-Bey contends that he was not given the opportunity to address his concern that the reason for his termination was that he had recently filed an internal complaint alleging sexual harassment and that that denial violated his procedural due process rights.  However, to establish a procedural due process claim, Mr. Tinnin-Bey must establish: "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process."  Hudson v. City of Chicago, 374 F.3d 554, 559 (7th Cir. 2004) (quoting Buttitta v. City of Chicago, 9 F.3d 1198, 1201 (7th Cir. 1993)).

Here, although Mr. Tinnin-Bey's employment was terminated, he has failed to demonstrate that he had any property interest in continued employment at the Detention Center.  There is nothing in the record to suggest, nor has Mr. Tinnin-Bey argued, that his employment was anything other than an at-will arrangement.  Under Seventh Circuit law, an at-will employee does not have a constitutionally protected property right in continued employment.  Harris v. City of Auburn, 27 F.3d 1284, 1286 (7th Cir. 1994) (citing Campbell v. City of Champaign, 940 F.2d 1111, 1112 (7th Cir. 1991); McMillian v. Svetanoff, 878 F.2d 186, 191-92 (7th Cir. 1989)).  Because Mr. Tinnin-Bey has failed to point to anything that alters the character of his at-will employment status, such as a state statute, regulation, or specific contractual right, he has failed to demonstrate a cognizable property interest entitled to constitutional protections.  See Harris, 27 F.3d at 1286.

### 3.    Substantive Due Process

Mr. Tinnin-Bey also maintains that his complaint raises a cognizable substantive due process claim.  However, the scope of the protections afforded by substantive due process is highly limited, applying only to decisions affecting fundamental rights.  <u>Wozniak v. Conry</u>, 236 F.3d 888, 891 (7th Cir. 2001).  It is well-established that "a claim that employment was wrongfully terminated is not sufficient to state a substantive due process claim unless the plaintiff also demonstrates that the defendants violated some other constitutional right or that available state remedies were inadequate."  <u>Horstmann v. St. Clair County, IL</u>, 2008 WL 4206333, at *3 (7th Cir. Sept. 8, 2008) (citing <u>Montgomery v. Stefaniak</u>, 410 F.3d 933, 939 (7th Cir. 2005)).  In his briefing, Mr. Tinnin-Bey does not develop his substantive due process claim beyond merely stating that his termination within two weeks of filing an internal complaint of sexual harassment denied him substantive due process.  We find nothing in this allegation that rises to the level of a substantive due process violation.

### 4.    Defamation Claims

In his complaint, Mr. Tinnin-Bey alleges that individuals associated with the Detention Center engaged in "defamation of character and slanderous and libelous acts against Plaintiff . . . in violation of the Eight and Fourteenth Amendments of the United States Constitution."  Compl. ¶ 3.  The Detention Center rejoins that Mr. Tinnin-Bey's defamation claim cannot survive summary judgment because neither the Eighth nor the Fourteenth Amendment provides a right to be free from defamation.

Eighth Amendment scrutiny is appropriate "only after the State has complied with the

28

constitutional guarantees traditionally associated with criminal prosecutions . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." Tesch v. County of Green Lake, 157 F. 3d 465, 473 n.1 (7th Cir. 1998) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977)). Because Mr. Tinnin-Bey alleges merely that individuals from the Detention Center defamed him, not that he was convicted of a crime and then had a criminal punishment imposed on him by those individuals, the Eighth Amendment has no application here.

Nor does Mr. Tinnin-Bey have a defamation claim based on the Fourteenth Amendment. Under Seventh Circuit law, mere defamation does not deprive a person of liberty protected by the Fourteenth Amendment, "even when the defamation causes serious impairment of future employment opportunities." McMahon v. Kindlarski, 512 F.3d 983, 988 (7th Cir. 2008). In order to state a due process claim pursuant to the Fourteenth Amendment in such a situation, a plaintiff would have to be able to show that the defendant "called into question his 'good name, reputation, honor or integrity' in a way that made it 'virtually impossible for the employee to find new employment in his chosen field.'" Id. (quoting Townsend v. Vallas, 256 F.3d 661, 670 (7th Cir. 2001)). Mr. Tinnin-Bey has presented no evidence that would satisfy this high standard. In fact, in his response brief, Mr. Tinnin-Bey completely failed to address this issue thereby waiving any such claim entirely.

For the foregoing reasons, we GRANT the Detention Center's Motion for Summary Judgment on Mr. Tinnin-Bey's constitutional claims brought pursuant to § 1983.

**V.     Conclusion**

For the reasons detailed above, we <u>GRANT</u> the Detention Center's Motion for

Summary Judgment in its entirety.  Final judgment will be entered accordingly.


Date:      06/25/2009
     _____

                                        _____
                                        SARAH EVANS BARKER, JUDGE
                                        United States District Court
                                        Southern District of Indiana


Copies to:

Jonathan Lamont Mayes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jmayes@indygov.org

Bobby Allen Potters
POTTERS LAW FIRM
bpotters@aol.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL, CITY OF INDIANAPOLIS
awill@indygov.org